**UNITED STATES of America, Plaintiff–Appellant,**

**v.**

**Hosep Krikor BAJAKAJIAN, aka: Joe Bajakajian, Defendant–Appellee.**

No. 95–50094.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 6, 1996.

Decided May 20, 1996.

Ronald L. Cheng, Assistant United States Attorney, Los Angeles, California, for the plaintiff-appellant.

James E. Blatt, Encino, California, for the defendant-appellee.

Ronald L. Cheng, Asst. U.S. Atty., Los Angeles, CA, for plaintiff-appellant.

James E. Blatt, Encino, CA, for defendant-appellee.

Before: WALLACE, FERGUSON, and T.G. NELSON, Circuit Judges.

FERGUSON, Circuit Judge:

The United States appeals the decision of the district court following the defendant's guilty plea to failure to report currency in violation of 31 U.S.C. § 5316(a)(1)(A).[1] Specifically, the United States appeals the district court's determination that the defendant was required to forfeit only $15,000 of the $357,144 at issue.[2] We affirm the decision of the district court.

## I. Factual and Procedural Background

On June 9, 1994, Bajakajian was attempting to board an Alitalia Airways flight leaving Los Angeles, destined for Cyprus. While Bajakajian was waiting to board his flight, U.S. Customs discovered approximately $140,000 concealed in four pieces of Bajakajian's checked luggage and $90,000 concealed in a false bottom of one of his bags. After discovering the hidden currency, a Customs inspector stopped the defendant and his family at the airport and informed them that they were required to report all money in both their personal possession and baggage which exceeded $10,000, irrespective of whether the money belonged to them. Bajakajian told the Customs inspector that he had $8,000 with him and that his wife had an additional $7,000. Bajakajian informed the inspector that his family had no additional money to report.

Customs inspectors discovered a total of $357,144 in United States currency in the carry-on baggage, checked-in baggage, wallet, and purse of the defendant and his wife. After being advised of his rights, Bajakajian admitted to Customs agents that he knowingly and wilfully failed to report the currency which was discovered.

On July 8, 1994, a grand jury returned a three count indictment against the defendant. Count One charged the defendant with violation of 31 U.S.C. §§ 5316(a)(1)(A) and 5322(a) for transporting currency of more than $10,000 outside of the United States without filing a report with the United States Customs Service. Count Two charged the defendant with making a false material statement to the United States Customs Service in violation of 18 U.S.C. § 1001. Count Three sought the forfeiture of the $357,144 discovered by Customs under 18 U.S.C. § 982(a)(1).

On October 27, 1994, pursuant to a plea agreement, the defendant entered a guilty plea as to Count One of the indictment and waived a jury trial as to Count Three. The government agreed to dismiss Count Two at the time of sentencing. On December 20, 1994, a bench trial was held for Count Three. The district court found that the entire $357,144 discovered by Customs agents was subject to criminal forfeiture pursuant to 18

---

**1.** 31 U.S.C. § 5316(a) provides in pertinent part: a person or an agent or bailee of the person shall file a report under subsection (b) of this section when the person, agent, or bailee knowingly—

(1) transports, is about to transport, or has transported, monetary instruments of more than $10,000 at one time—

(A) from a place in the United States to or through a place outside the United States....

**2.** In addition to appealing the district court's decision regarding the amount of currency which Bajakajian should be required to forfeit, the government has also appealed the district court's calculation of Bajakajian's base offense level and the district court's failure to enhance Bajakajian's sentence for obstruction of justice. However, this opinion only addresses the government's appeal of the district court's forfeiture calculation. The remaining issues will be resolved in a separate disposition.

U.S.C. § 982(a)(1). However, at sentencing, the district court ordered the defendant to forfeit only $15,000 of the $357,144. The district court concluded that forfeiture of more than $15,000 would be disproportionate to Bajakajian's culpability, and therefore unconstitutional under the Excessive Fines Clause of the Eighth Amendment. In calculating the amount of forfeiture, the district court recognized that all of the money at issue had come from a lawful source, and was to be used for a lawful purpose.

## II. *Discussion*

■ A district court's interpretation of federal forfeiture law is reviewed de novo. *United States v.1980 Lear Jet,* 38 F.3d 398, 400 (9th Cir.1994).

The government alleges on appeal that the district court erred in requiring forfeiture of only $15,000 because the entire $357,144 at issue should have been forfeited. In the alternative, the government requests forfeiture of $170,000, the amount of currency which Bajakajian asked a friend to lie about to Customs agents.

The forfeiture statute relevant to this litigation, 18 U.S.C. § 982(a)(1), provides in pertinent part: "The court, in imposing sentence on a person convicted of an offense in violation of section 5313(a), 5316 or 5324 of title 31 ..., shall order that the person forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property."

■ Therefore, pursuant to 18 U.S.C. § 982(a)(1), the entire $357,144 at issue in the present case is potentially forfeitable. However, a forfeiture is unconstitutional unless it survives scrutiny under the Excessive Fines Clause of the Eighth Amendment. "The Excessive Fines Clause limits the Government's power to extract payments, whether in cash or in kind, 'as *punishment* for some offense.'" *Austin v. United States,* 509 U.S. 602, 609–10, 113 S.Ct. 2801, 2805, 125 L.Ed.2d 488 (1993) (citation omitted). *See also Alexander v. United States,* 509 U.S.

544, 557–60, 113 S.Ct. 2766, 2775–76, 125 L.Ed.2d 441 (1993) (holding that criminal forfeiture is a form of monetary punishment subject to the Eight Amendment's Excessive Fines Clause); *United States v. Sarbello,* 985 F.2d 716, 717–18 (3d Cir.1993) (holding that a court may reduce an otherwise mandatory 100% statutory criminal forfeiture on the basis of the Excessive Fines Clause of the Eighth Amendment). Therefore, forfeiture in the present case must be subjected to analysis under the Excessive Fines Clause.

The Supreme Court, in *Austin,* declined to enumerate the factors to be considered in determining whether a forfeiture violates the Excessive Fines Clause. *Austin,* 509 U.S. at 621–23, 113 S.Ct. at 2812. We recently addressed this issue and established a two-pronged test for determining whether a forfeiture is unconstitutionally excessive under the Eighth Amendment. *United States v. Real Property Located in El Dorado County,* 59 F.3d 974, 982 (9th Cir.1995).

■ Pursuant to this court's Excessive Fines Clause test, a forfeiture is constitutional if: (1) the property forfeited is an "instrumentality" of the crime committed; and (2) the value of the property is proportional to the culpability of the owner.[3] *Id.* at 982. Therefore, Bajakajian cannot be ordered to forfeit any currency unless forfeiture in the present case would satisfy both the instrumentality and proportionality prongs of our recently established Excessive Fines Clause test.

Application of the instrumentality prong of the Excessive Fines test to a 31 U.S.C. § 5316 violation was recently discussed by this court in *United States v. $69,292 in United States Currency,* 62 F.3d 1161 (9th Cir.1995). The court questioned whether the currency involved in a § 5316 violation could ever be considered the instrumentality of the crime of failure to report. The court explained that it was not persuaded "that currency lawfully acquired and possessed has that necessarily close relationship to the

---

**3.** The district court bypassed the instrumentality prong of the two part *El Dorado* Excessive Fines test and examined only the proportionality of forfeiture in the present case. This is probably due to the fact that the Ninth Circuit's decision in *El Dorado* was handed down subsequent to the district court's decision.

crime simply because it has not been reported. The crime is the withholding of information, 31 U.S.C. § 5316, not the possession or the transportation of the money." *Id.* at 1167. The court further explained that the money at issue in a § 5316 violation is not contraband, and the money is presumed under the statutory scheme to be lawfully acquired and possessed. The statute does not impose a limit on the amount of U.S. currency which may be exported to foreign jurisdictions. Persons leaving the United States are free, as they have always been, to take with them such amounts of cash as they so choose. *Id.*

This court, in *$69,292*, also rejected the argument that the currency in a § 5316 violation satisfies the instrumentality requirement based upon the notion that the currency's existence was a precondition to the reporting requirement of 31 U.S.C. § 5316.

> Simply put the existence of the currency as a precondition does not make it an instrumentality. For example, we would not characterize lawfully earned income an instrumentality forfeitable as such simply because a taxpayer wilfully failed to report that income on his tax return in violation of the tax code. The government would have us stretch the fiction of an "instrumentality" to the breaking point.

*Id.* at 1167–68 (citation omitted). *See also Austin v. United States*, 509 U.S. 602, 619–21, 113 S.Ct. 2801, 2811, 125 L.Ed.2d 488 (1993) (rejecting expansive definitions as to what qualifies as the instrumentality of a particular crime).

**4.** 19 U.S.C. § 1497 has since been amended, but at the time of *One Lot Emerald Cut Stones*, it provided:

> Any article not included in the declaration and entry as made, and, before examination of the baggage was begun, not mentioned in writing by such person, if written declaration and entry was required, or orally if written declaration and entry was not required, shall be subject to forfeiture and such person shall be liable to a penalty equal to the value of such article.

**5.** Such a distinction is not new. *See Austin v. United States*, 509 U.S. 602, 619–23, 113 S.Ct. 2801, 2811–12, 125 L.Ed.2d 488 (1993) (The Supreme Court distinguished cases involving

The government argues that the majority opinion in *$69,292* conflicts with the Supreme Court's decision in *One Lot Emerald Cut Stones v. United States*, 409 U.S. 232, 93 S.Ct. 489, 34 L.Ed.2d 438 (1972). There, the Court upheld the forfeiture of imported goods pursuant to 19 U.S.C. § 1497,[4] where the defendant failed to declare one lot of emerald cut stones and a ring upon his entry into the United States. *Id.* at 233, 93 S.Ct. at 491.

However, *$69,292* and *One Lot Emerald Cut Stones* are not in conflict. *One Lot Emerald Cut Stones* involved the smuggling of contraband. When a defendant is convicted for failure to report currency pursuant to 31 U.S.C. § 5316, the crime is not the illegal possession, transportation, or smuggling of dutiable items. Rather, the crime is merely the failure to provide information. Money in lawful possession, as it was here, is not contraband. Moreover, the currency at issue in a § 5316 violation is not contraband, is presumed to be lawfully possessed and is not subject to duty. It is not illegal to take currency out of the country. The key difference is that a violation of § 5316 merely deprives the government of information, whereas the smuggling of goods across the border deprives the government of revenue. *$69,292*, 62 F.3d at 1167. Therefore, there is a much tighter instrumentality connection between property sought to be forfeited and the crime when the crime committed is the failure to pay a duty.[5]

■ We hereby adopt the logic of the court in *$69,292*.[6] Forfeiture of currency is

drug forfeitures from cases involving customs violations.).

**6.** The government alleges that the reasoning of the majority in *$69,292* with respect to the Excessive Fines Clause and 31 U.S.C. § 5316 is dicta because the district court might not have needed to address this issue on remand. However, this portion of *$69,292* is not dicta. "[D]irection to the district on how to proceed continues to be binding precedent, even if characterized as an alternative holding." *Operating Eng'rs Pension Trust v. Charles Minor Equip. Rental, Inc.*, 766 F.2d 1301, 1304 (9th Cir.) (explaining that it was not dicta for the Ninth Circuit in *Sapper v. Lenco Blade, Inc.*, 704 F.2d 1069 (9th Cir.1983) to direct the district court on how to resolve an issue on remand which might only arise, depend-

unconstitutional when the crime to which the forfeiture is tied is a mere failure to report pursuant to 31 U.S.C. § 5316. In such situations, there simply is not an instrumentality relationship between the currency and the crime to satisfy the instrumentality prong of the Excessive Fines test.[7]

Therefore, the district court erred in ordering Bajakajian to forfeit $15,000. Forfeiture of any amount would be unconstitutionally excessive under the *El Dorado* Excessive Fines Clause test. However, Bajakajian failed to file a cross-appeal requesting a modification of the district court's order that he forfeit $15,000. If an appellee seeks a modification of the district court's judgment, he must file a cross-appeal requesting the modification. Unless an appellee files a cross-appeal, "the appellee may not attack the [district court's] decree with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary, whether what he seeks is to correct an error or to supplement the decree with respect to a matter not dealt with below." *United States v. One 1964 MG*, 584 F.2d 889, 890 (9th Cir. 1978) (quoting *United States v. American Ry. Express Co.*, 265 U.S. 425, 435, 44 S.Ct. 560, 563–64, 68 L.Ed. 1087 (1924)).

Although pursuant to the Excessive Fines Clause Bajakajian cannot be ordered to forfeit any of the unreported currency, he is nonetheless forced to accept the decision of the district court. Bajakajian failed to file a cross-appeal, and therefore, this court lacks jurisdiction to set aside the district court's forfeiture order of $15,000.

### III. *Conclusion*

The decision of the district court is AFFIRMED.

---

ing upon the resolution of another issue), *modified*, 778 F.2d 538 (9th Cir.1985).

**7.** The government argues that *United States v. One 1985 Mercedes–Benz*, 14 F.3d 465 (9th Cir. 1994) provides support for forfeiture in the present case. In *One 1985 Mercedes–Benz*, the court held that vehicles used to export currency in violation of 31 U.S.C. § 5316 are subject to forfeiture under 18 U.S.C. § 982. However, *One 1985 Mercedes–Benz* does not provide support for forfeiture in the present case for two reasons. First, a car used to transport money is clearly the

WALLACE, Circuit Judge, concurring:

The majority takes our dicta in *United States v. $69,292.00 in U.S. Currency*, 62 F.3d 1161 (9th Cir.1995) (*$69,292*), to an illogical extreme. In so doing, the majority strikes down a portion of 18 U.S.C. § 982(a)(1), thereby unduly limiting the government's forfeiture powers. I agree only with the majority's ultimate decision to affirm the $15,000 forfeiture. Because I would do so for entirely different reasons, I concur in result only.

We are not bound by the dicta in *$69,292*. In *$69,292*, we explained the analysis used to determine whether a forfeiture violates the Eighth Amendment. *$69,292*, 62 F.3d at 1166–67, citing *United States v. Real Property Located in El Dorado County*, 59 F.3d 974 (9th Cir.1995) (*El Dorado*). To satisfy the Eighth Amendment's prohibition against excessive fines, forfeited property must be instrumental to the crime and proportional in value to the culpability of the owner. *El Dorado*, 59 F.3d at 982. In *$69,292*, the district court did not analyze the forfeiture in terms of our intervening decision in *El Dorado*. Thus, we remanded to enable the district court to make appropriate findings. *$69,292*, 62 F.3d at 1168.

The majority would read *$69,292* as holding that currency involved in a section 5316 violation is never an instrumentality of the crime. Majority at 337 & n.6. The majority's reading of *$69,292* renders all forfeitures of currency in such circumstances unconstitutional under our test in *El Dorado*. But if in *$69,292* we had held that all forfeitures of currency involved in reporting violations necessarily fail *El Dorado*, we would not have written that, "[w]e make no assessment as to

---

instrumentality of a § 5316 violation because the car itself is used to export and conceal the currency. Second, *One 1985 Mercedes–Benz* was decided prior to both *El Dorado*, which established the two-pronged Excessive Fines test, and *$69,292*, which applied the *El Dorado* test for the first time to a § 5316 violation. Therefore, the facts of *One 1985 Mercedes–Benz* are not analogous to the facts of the present case, and its logic is questionable due to the recent decisions handed down by this court in *El Dorado* and *$69,292*.

whether the forfeiture meets the *El Dorado* test." *$69,292*, 62 F.3d at 1168. As Judge Rymer accurately wrote in dissent, *$69,292*'s instrumentality discussion is dicta. *Id.* at 1168 (Rymer, J., dissenting).

Not only is this *$69,292* discussion clearly dicta, but there are two additional interrelated problems—one with the majority's interpretation of the dicta in *$69,292* and one with the *$69,292* dicta itself.

First, the majority misreads our remarks in *$69,292*. We asserted there that we were not "persuaded that currency *lawfully acquired and possessed* has the necessarily close relationship to the crime simply because it has not been reported." *Id.* at 1167 (emphasis added). Our remarks were focused on the source of the defendants' funds, and we suggested that legally obtained funds might not be instrumental. *See id.* (explaining that "the reporting requirement applies to all currency, whether it is lawfully gained or not," and suggesting that we should analyze forfeiture based in part on the source of the funds). If on remand the district court in *$69,292* had found that the defendants acquired the funds illegally, nothing in *$69,292* would have precluded forfeiture.

The majority, purporting to "adopt the logic of the court in *$69,292*," maj. op. at 337, overlooks *$69,292*'s underlying rationale. The majority holds that "[f]orfeiture of currency is unconstitutional when the crime to which the forfeiture is tied is a mere failure to report pursuant to 31 U.S.C. § 5316." *Id.* Thus, even if a district court finds that money was illegally acquired, the majority does not allow forfeiture. Or, even if a defendant's failure to report is combined with another violation of United States law (and the other law does not independently allow forfeiture), the majority would still not allow forfeiture. Nothing in *$69,292*'s dicta supports this result.

Second, it is precisely *$69,292*'s focus on lawfully acquired funds that makes *$69,292*'s instrumentality dicta problematic. *$69,292* suggests that instrumentality should turn, at least in part, on the source of the funds. However, I interpret the instrumentality inquiry as being completely divorced from the source of the funds. After all, why is curren-

cy any more instrumental when the currency is legally obtained as opposed to when it is illegally obtained? *See United States v. $145,139.00*, 18 F.3d 73, 75 (2d Cir.) (Currency was "an instrument of the crime [of failure to report]. It was the 'means' by which the crime was committed.... Indeed, it was the very *sine qua non* of the crime."), *cert. denied*, —— U.S. ——, 115 S.Ct. 72, 130 L.Ed.2d 27 (1994); *Austin v. United States*, 509 U.S. 602, 627–29, 113 S.Ct. 2801, 2815, 125 L.Ed.2d 488 (1993) (Scalia, J., concurring) (explaining the instrumentality inquiry as being whether "property has been 'tainted' by unlawful use ... [in other words,] whether the confiscated property has a close enough relationship to the offense" (emphasis omitted)), *quoted in El Dorado*, 59 F.3d at 982. In this case, the crime was Bajakajian's failure to report $357,144 that he had secretly stashed. I cannot agree with the majority that there is an insufficient nexus between the acquired currency and the offense—without the currency, there can be no offense.

Of course, the source of the acquired funds *does* have a place in our Eighth Amendment inquiry under *El Dorado*. However, the inquiry into the source of the funds is part of the *proportionality* analysis, not the instrumentality inquiry. *El Dorado*, 59 F.3d at 985–86 (explicitly requiring district court to consider, as part of proportionality determination, the "culpability of the owner"); *see also id.* at 983 (adopting "the proportionality test as a check on the instrumentality approach" because of the instrumentality prong's "potentially harsh results, when applied alone"). If, as the district court held, Bajakajian's funds were lawfully obtained from friends and family and were not to be illegally used, then these facts might warrant a reduced forfeiture to avoid an excessive fine.

I therefore disagree with the majority's conclusion that the currency was not instrumental as a matter of law. I would hold that the district court properly found that the entire amount of currency was potentially forfeitable. The currency was instrumental. As to proportionality, I would review for clear error the district court's factual findings underpinning its decision to forfeit only

$15,000. *See United States v. Alcaraz–Garcia,* 79 F.3d 769, 772 (9th Cir.1996) (findings of fact underlying forfeiture reviewed for clear error). The district court found that the funds were lawfully acquired and were to be lawfully used. The district court next found that forfeiture of only $15,000 was proportional to Bajakajian's culpability. I do not believe that the district court's findings were clearly erroneous; therefore, I would affirm the $15,000 forfeiture.