**UNITED STATES of America, Plaintiff,**

v.

**Hugo DELGADO and Miguel Delgado, Defendants.**

**No. 96–593–CR.**

United States District Court,
S.D. Florida,
Miami Division.

Jan. 15, 1997.

Randy Hummell, Assistant U.S. Attorney, Miami, FL, for Plaintiff.

Alan Karten, Miami, FL, for Defendants.

### *ORDER*

K. MICHAEL MOORE, District Judge.

THIS CAUSE came before the Court upon Defendants' Motion to Dismiss the Forfeiture Count of the Indictment as violative of the Excessive Fines Clause of the Eighth Amendment to the United States Constitution (D.E.24)[1] and upon Plaintiff's Motion for an Order of Forfeiture (D.E.34). For the reasons set forth herein, the Motion to Dismiss is DENIED and the Motion for an Order of Forfeiture is GRANTED.[2]

BACKGROUND

In June, 1996, U.S. Customs Inspectors, using X-rays, found currency concealed in defendants' luggage checked for a flight from Miami to Bogota, Colombia. Subsequent investigation by Customs revealed that the defendants had $237,282 in U.S. currency on their persons and in their luggage that they were attempting to remove from the United States without reporting. Defendants were arrested and the currency was seized. Defendants were charged in a four count indictment.[3] At the July 25, 1996 plea colloquy, defendants pled guilty to Count 2, which

---

1. At the sentencing hearing, defendants' counsel conceded that dismissal of the forfeiture count would be improper, but asserted that forfeiture of the entire amount seized would violate the Eighth Amendment. Counsel for the parties argued the constitutional question before the Court. Defendants stipulated that the forfeiture issue would be tried before the Court through appropriate pleadings and a factual stipulation. Defendants agreed that the Court may treat as a stipulation of fact the government's proffer made at the sentencing hearing (Plea Agreement, ¶ 6). Thus, although raised in the context of a motion to dismiss, the Court looks to the entire record developed before it in determining the constitutionality of the forfeiture order.

2. Plaintiff argued that an Eighth Amendment analysis of the forfeiture question was premature. This Court is entering an order forfeiting $237,282 to the United States government. Accordingly, this Order is not premature.

3. Count 1 alleges that defendants conspired to knowingly and willfully fail to file U.S. Customs form 4790, Report of International Transportation of Currency or Monetary Instruments as defendants attempted to transport in excess of $10,000 from a place in the United States to a place outside of the United States, i.e., Colombia, in violation of 18 U.S.C. § 371. Counts 3 and 4 allege that Hugo Delgado and Miguel Delgado, respectively, knowingly and willfully made false, fraudulent and fictitious statements as to a material fact to a Customs agent that he was transporting less than $10,000 in U.S. currency from a place within the United States to a place outside of the United States, in violation of 18 U.S.C. § 1001.

alleged that the defendants knowingly and willfully failed to file Customs form 4790 in violation of 31 U.S.C. §§ 5316(a)(1)(A) and 5322(a), 18 U.S.C. § 2 and 31 C.F.R. § 103.23. The final count of the indictment is a forfeiture count, which states:

> As a result of the offense in Count 2, the defendants HUGO DELGADO and MIGUEL DELGADO shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982, any and all interest that defendants have in the property involved in said offense and all property traceable to such property, including but not limited to two hundred thirty-seven thousand two hundred eighty-two dollars ($237,282).

As part of the plea agreement, each defendant agreed to waive his right to a jury trial to contest the forfeiture count of the indictment and to submit that limited issue to the district court judge for the court to make findings of fact, conclusions of law and the rendering of a forfeiture verdict (Plea Agreement, ¶ 6). The Court held a sentencing hearing on October 17, 1996, and counsel presented evidence and arguments. Accordingly, based on the evidence presented and the record in this case, the Court makes the following findings of fact and conclusions of law in the rendering of a forfeiture verdict.

## FINDINGS OF FACT

On or about June 19, 1996, defendants were approached by U.S. Customs Inspectors in Miami International Airport. The Customs Inspectors advised defendants of the obligation to report any U.S. currency that they were transporting out of the country in excess of $10,000, and provided defendants with a copy of Customs form 503B to complete (Plea Colloquy, p. 9, ll. 1–10). Each defendant completed the form. Defendant Hugo Delgado ("Hugo") stated that he had $9,200 in U.S. currency in his carry on luggage (Presentence Investigation Report ("PSR"), ¶ 4). He denied having additional currency in his checked luggage (*id.*). A search of his luggage revealed approximately $197,982 in U.S. currency hidden in the plastic housing of a television set that the defendants had purchased the day before at a local Miami electronics store (*id.*, ¶ 5; Plea Colloquy, p. 10, ll. 10–19).

Defendant Miguel Delgado ("Miguel") stated that he had $8,400 in U.S. currency on his person and he denied having additional currency in his luggage (PSR, ¶ 6). A search of his luggage revealed $39,300 in U.S. currency hidden in a box of diapers (*id.*, ¶ 7). After being advised of his Miranda rights, Miguel admitted that the currency in the package of diapers belonged to him, that he was aware of the reporting requirements and that he had reported only the currency on his person (*id.* ¶ 8; Plea Colloquy, p. 10, ll. 3–9).

The Court finds that defendants were working together to remove the currency from the United States without reporting it (PSR, ¶ 5). Defendants stated that the currency was to be used to purchase watches and electronic goods for sale in Colombia and they supplied bank records and other materials in support of that assertion. (PSR, ¶ 13; Objection to PSR, ¶¶ 11–12). However, the bank records provided were not business account records, the currency in defendants' possession at the time of the arrest was not withdrawn from any of the accounts for which defendants provided records and, according to Customs records, the seized currency had not been declared upon defendants' entry into the United States (Addendum to PSR, at 2–3). One of the government's witnesses stated that neither the bank records nor the CMIR filings submitted by defendants account for the money that was seized in this case (Sentencing Hearing, testimony of Norman Bright at 47, ll. 2–5; 49, ll. 13–16). Moreover, although defendants claim that they conduct a business of purchase and resale of electronics and watches, neither defendant was transporting a sizable stock of either item at the time of their arrest. Based on the record before the Court, including Hugo's testimony and demeanor at the sentencing hearing, the Court finds defendants' explanation regarding the source of and intended use for the seized currency unsupported by the evidence.

Moreover, the court has reason to doubt the credibility of defendants in this proceeding. Hugo's testimony at the sentencing hearing contradicted his representations to the Court at the plea colloquy. Specifically,

although he had stipulated to the contrary, he testified before the Court that no Customs officer told him that outgoing currency had to be declared and that no one asked him if he had any currency in his luggage. The Court rejects defendant's argument that these misrepresentations are immaterial. Subsequent investigation by Probation revealed that Miguel Delgado had lied about never having been arrested. In 1993, Drug Enforcement Agency ("DEA") personnel seized $400,000 from Miguel and arrested him and his companions, Maria Marta Delgado–Devazib and Jose Maria Tejada. According to the DEA Investigative Report, Miguel, Delgado–Devazib and Tejada are believed to be employed as money couriers by a narcotics trafficking organization (Second Addendum to PSR, at 1–2). Additionally, in 1994, U.S. Customs seized $299,735 from Miguel in New York City as part of an ongoing undercover operation involving alleged narcotics proceeds. The petition for return of the seized funds was denied in August 1996 based on inconsistencies in his explanation for a legitimate source of the income seized in 1994 and a lack of evidence (Addendum to PSR, at 5).

The Court finds that defendants knew or were made aware of the currency reporting requirements and consciously disregarded them in an attempt to remove the currency from the United States without reporting it. Moreover, the testimony given by the government's witnesses at the sentencing hearing indicates a strong likelihood that the currency and defendants were part of a money laundering operation.

CONCLUSIONS OF LAW

■ The Eighth Amendment provides that "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. Am. VIII. The Excessive Fines Clause limits the Government's power to extract payments whether in cash or in kind, as punishment for some offense.[4] *Alexander v. United States,*

509 U.S. 544, 559, 113 S.Ct. 2766, 2776, 125 L.Ed.2d 441 (1993). Forfeiture serves both punitive and deterrent purposes and it imposes an economic penalty, designed to render the illegal behavior unprofitable. *Bennis v. Michigan,* —— U.S. ——, ——, 116 S.Ct. 994, 1000, 134 L.Ed.2d 68 (1996); *Libretti v. United States,* —— U.S. ——, ——, 116 S.Ct. 356, 363, 133 L.Ed.2d 271 (1995); *Austin v. United States,* 509 U.S. 602, 617–19, 113 S.Ct. 2801, 2810, 125 L.Ed.2d 488 (1993); *Calero–Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 686–687, 94 S.Ct. 2080, 2093–94, 40 L.Ed.2d 452 (1974). In *Alexander v. United States,* 509 U.S. 544, 113 S.Ct. 2766, 125 L.Ed.2d 441 (1993), the Supreme Court held that the Excessive Fines Clause of the Eighth Amendment applies to criminal *in personam* forfeiture.

■ Thus, a criminal *in personam* forfeiture violates the Eighth Amendment if it is "excessive." The Supreme Court declined to provide a checklist for determining when a forfeiture is "excessive" within the meaning of the Eighth Amendment. *Austin,* 509 U.S. at 621–23, 113 S.Ct. at 2812. A court must consider all factors when evaluating whether a forfeiture is unconstitutionally excessive. *Alexander,* 509 U.S. at 559, 113 S.Ct. at 2776 (suggesting proportionality analysis would be appropriate, by remand for determination of whether forfeiture order violated Eighth Amendment in "light of the extensive criminal activities which petitioner apparently conducted through this racketeering enterprise over a substantial period of time"); *see Austin,* 509 U.S. at 627–28, 113 S.Ct. at 2815 (Scalia, J., concurring) ("touchstone" of excessiveness analysis in criminal *in personam* context is "the value of the fine in relation to the offense"); *see also U.S. v. One Parcel Property Located at 427 and 429 Hall Street,* 74 F.3d 1165 (11th Cir.1996). To arrive at a judgment of excessiveness, the court must look at whether the fine is in proportion to the harm inflicted or the loss sustained. *Al-*

---

4. In *Alexander,* the defendant was convicted on, *inter alia,* 17 obscenity counts and three counts of RICO violations. 509 U.S. at 546–47, 113 S.Ct. at 2769. He was sentenced to a 6 year prison term, ordered to pay a $100,000 fine and ordered to forfeit retail and wholesale businesses and almost $9 million in moneys acquired in

racketeering under 18 U.S.C. § 1963. *Id.* at 546–49, 113 S.Ct. at 2769–2770. He challenged the forfeiture order on First and Eighth Amendment grounds. The Supreme Court remanded the case to the lower court for a determination of whether the forfeiture order violated the Eighth Amendment.

*exander,* 509 U.S. at 559, 113 S.Ct. at 2776 (fine must be "grossly disproportionate" to crime to violate Eighth Amendment). Thus, whether a forfeiture is excessive must be viewed in light of the aims of the statute, defendants' criminal activities, the source of the monies and the loss sustained. *See id.*

### The Aims of the Statute

■■■ The United States seeks forfeiture of the currency pursuant to 18 U.S.C. § 982, which statute requires forfeiture upon a criminal conviction under 31 U.S.C. § 5316. Section 982(a)(1) of Title 18 provides that "[t]he court, in imposing sentence on a person convicted of an offense in violation of section 5313(a), 5316, or 5324 of Title 31 ... *shall order* that the person forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property" (emphasis added). Thus, according to the unambiguous terms of 18 U.S.C. § 982(a)(1), the seized currency is subject to forfeiture as "property involved in the offense."[5] This, however, does not address whether such forfeiture is "excessive" in an Eighth Amendment sense.

■ The currency reporting laws, which include 31 U.S.C. § 5316, were enacted to assist in investigations of criminal, tax and regulatory violations, even where the money was legitimately derived. *United States v. O'Banion,* 943 F.2d 1422, 1435 (5th Cir.), *reh'g denied,* 948 F.2d 1287 (1991) (quoting *United States v. One Lot of $24,900 in U.S. Currency,* 770 F.2d 1530, 1534 (11th Cir. 1985)); *see BMW of North America, Inc. v. Gore,* — U.S. —, —, 116 S.Ct. 1589, 1603, 134 L.Ed.2d 809 (1996). As one court noted,

> Forfeiture for violations of the Currency and Foreign Transactions Reporting Act is supportable as a reasonable method of en-

suring enforcement of currency declaration requirements. *Cf. United States v. Walker,* 940 F.2d 442, 444 (9th Cir.1991) (government has heavy financial burden in administering customs laws.) Those requirements are, in turn, rational in light of the pervasive underground economy that avoids taxes. In addition to supporting inducements to pay taxes, the cash reporting requirements inhibit money-laundering and provide leads to criminal sources of cash. It cannot be said that the cash-reporting forfeiture statutes do not have well defined and sensibly effectuated ends.... Nonetheless, although currency crimes do not inflame the passions of the public as do drug crimes, they have harmful effects. The currency reporting statutes have a serious purpose. The Currency and Foreign Transactions Reporting Act of 1970 permits the United States to monitor the flow of currency into and out of the country, both for the purpose of determining trade balances and the cash available in this country and to detect and prevent other crimes. *See generally* S.Rep. No. 1139, 91st Cong., 2d Sess. 7 (1970); H.Rep. No. 975, 91st Cong., 2d Sess. 19–20, reprinted at 1970 U.S.Code. Cong. & Admin.News 4404–05. *Forfeiture is a rational response of the government to violation of currency regulations. and it is one of few effective tools to enforce such laws.*

*United States v. United States Currency, $145,139,* 803 F.Supp. 592, 597, 600 (E.D.N.Y. 1992) (Weinstein, J.) (emphasis supplied), *aff'd,* 18 F.3d 73 (2d Cir.), *cert. denied,* 513 U.S. 815, 115 S.Ct. 72, 130 L.Ed.2d 27 (1994).

### The Defendants' Prior Activities

■■■ Defendants pled guilty to violating 31 U.S.C. §§ 5316(a)(1)(A) and 5322. In

---

**5.** Several courts have held that unreported currency becomes an instrumentality of the crime. *United States v. United States Currency,* 18 F.3d 73 (2d Cir.), *cert. denied,* 513 U.S. 815, 115 S.Ct. 72, 130 L.Ed.2d 27 (1994); *United States v. $83,-132 in U.S. Currency,* No. 95–Cv–2844, 1996 WL 599725 (E.D.N.Y. Oct.11, 1996); *United States v. $446,172 U.S. Currency,* No. 92–2656, 1993 WL 26769 (D.N.J. Feb.3, 1993); *contra United States v. Bajakajian,* 84 F.3d 334, 337 (9th Cir.1996) (unreported currency never instrumentality of crime). This Court need not determine whether

the unreported currency is an "instrumentality" of the crime because the instrumentality test is not required for a criminal *in personam* forfeiture. *See Alexander v. United States,* 509 U.S. 544, 113 S.Ct. 2766, 125 L.Ed.2d 441 (1993). The instrumentality test is based on the theory that the property is guilty of an offense and is somehow tainted by its unlawful use. *Austin,* 509 U.S. at 623–25, 113 S.Ct. at 2813. A criminal forfeiture is in personam and predicated on the guilt of the defendant. There is, therefore, no need to engage in an instrumentality analysis.

1993, Miguel was arrested by the DEA for similar activities, which resulted in forfeiture of $400,000. In 1994, Customs seized $299,-735 from Miguel in New York City as part of an ongoing undercover operation involving alleged narcotics proceeds. The seized funds were ultimately forfeited administratively. Miguel knew of currency reporting requirements and ignored them. He lied to customs agents and underreported the currency he was attempting to move outside the United States by tens of thousands of dollars. Hugo lied to customs agents and underreported the currency he was attempting to move outside the United States by tens of thousands of dollars. At the sentencing hearing, he contradicted former representations made to the government and, through the plea agreement, to the Court.

### Source of the Monies

The Court has found that the defendants have not established that the currency at issue was lawful proceeds nor was intended to be used for lawful activities. Indeed, based on the evidence presented by the government, the Court believes the opposite is very likely true. *See United States v. Vazquez*, 53 F.3d 1216, 1226 (11th Cir.1995) (trier of fact can determine testimony of defendant is untrue based on credibility analysis).

### Amount Subject To Forfeiture

██ Finally, the amount subject to forfeiture is not "grossly disproportionate" to the harm involved.[6] The amount at issue here, $237,282, is less than the maximum fine that may be imposed under the statute. 31 U.S.C. § 5322(a) (maximum fine of up to $250,000 for willful violation). *See, e.g., United States v. United States Currency $145,-139*, 18 F.3d at 76 (forfeiture of $145,000 in unreported currency not excessive because Congress intended that liability for failure to declare can be equal to amount of monetary instrument involved); *accord, U.S. v. $83,132 in U.S. Currency*, 1996 WL 599725 (E.D.N.Y. 1996).

Defendants rely on *U.S. v. Dean*, 80 F.3d 1535, *modified*, 87 F.3d 1212 (11th Cir.1996) and *United States v. Bajakajian*, 84 F.3d 334 (9th Cir.1996). *Dean*, however, does not support defendants' position. *Dean* involved civil forfeiture under 31 U.S.C. § 5317 and whether the district court was permitted to modify a plea agreement containing a forfeiture provision where such forfeiture was unfair. Moreover, the money was lawfully obtained and was to be used for lawful purposes. *Dean*, 80 F.3d at 1538.

In *Bajakajian*, the Ninth Circuit held that all currency forfeitures are unconstitutional because unreported currency can never be an instrumentality of the crime and can, therefore, never satisfy the two prong test applied in the Ninth Circuit. 84 F.3d at 336. The Court declines to follow *Bajakajian* on several grounds. First, *Bajakajian* is contrary to Eleventh Circuit law because the Eleventh Circuit applies a proportionality test, not an instrumentality test, in civil *in rem* forfeiture cases. *United States v. One Parcel Property*, 74 F.3d 1165, 1170 (11th Cir.1996) (Tjoflat, C.J.) (civil *in rem* forfeiture under 21 U.S.C. § 881(a)(7) is designed to punish individual, accordingly instrumentality test is inappropriate). Although *Bajakajian* involves the criminal forfeiture of unreported currency, the Ninth Circuit test was developed in the civil in rem context. *Bajakajian*, 84 F.3d at 336. Second, *Bajakajian* is factually distinguishable because the District Court found that the funds were lawfully acquired and were intended for a lawful purpose. Third, the Ninth Circuit's holding effectively obviates a portion of a statute enacted by Congress, with which result this Court respectfully does not agree.

Based on the foregoing findings of fact and conclusions of law, the defendants' Motion to Dismiss the Forfeiture Count as unconstitutional is DENIED. It is further

ORDERED AND ADJUDGED that plaintiff's motion for an Order of Forfeiture is

---

**6.** The party challenging the forfeiture has the initial burden of making a prima facie showing of "gross disproportionality." *United States v. Alexander*, 32 F.3d 1231, 1235 (8th Cir.1994); *United States v. Sarbello*, 985 F.2d 716, 724 (3d Cir.1993). In support of its motion to dismiss, defendants argue that the forfeiture is disproportionate to the harm involved. Defendants characterize the harm involved as being governmental deprivation of information due to the failure to report the outbound currency.

GRANTED. A separate Order of Forfeiture will be issued.