**UNITED STATES of America, Plaintiff–Appellee,**

v.

**$133,735.30 SEIZED FROM U.S. BANCORP BROKERAGE ACCOUNT NO. 32130630, In the Name of Roseland Properties, Inc.; All Funds Seized from Bidwell & Co. Account 107006847, In the Name of Roseland Properties Inc.; $101,600.00 in U.S. Currency; NEC Computer Monitor, Serial # 7X02233A; Keytronics Computer Keyboard, Serial # 0938976; AST Bravo CPU, # TWB3025888; Hayes Smartmodem 2400, # A04000173701; Hewlett Packard Laserjet II Printer, # 2803ADD121 including two paper trays; Computer Mouse, Serial # 517695; Computer Surge Suppressor, model CPP12; Pacific Date Products, font cartridge and soft-**ware # 481774; Daceasy Accounting Version 3.0, software and manual # 113204058; Software Manuals and Floppy Disks, **Defendants,**

and

**William Vosburgh, Claimant–Appellant.**

**No. 97–35267.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 4, 1998.

Decided March 23, 1998.

Colleen B. Scissors, Assistant Federal Public Defender, Portland, OR, for claimant-appellant.

Leslie J. Westphal, Assistant United States Attorney, Portland, OR, for plaintiff-appellee.

Before: FERNANDEZ, RYMER and TASHIMA, Circuit Judges.

RYMER, Circuit Judge:

In this appeal, we decide whether the United States sufficiently disgorges the benefit that it receives from holding improperly seized funds when it turns over the interest that accrues in an interest-bearing Treasury account into which the funds are deposited.

William C. Vosburgh, a prevailing claimant in the government's civil *in rem* action to forfeit currency and computer equipment, appeals the district court's order directing the government to pay interest on the seized money at "the prevailing government rate." Instead, Vosburgh contends, he was entitled to interest at the government's "alternative borrowing rate" under our decision in *United States v. $277,000 U.S. Currency,* 69 F.3d 1491 (9th Cir.1995), or at least to a hearing to determine what portion of his funds reflected money the government avoided borrowing to meet other debts. We held in *$277,000* that the government must disgorge earnings on a claimant's property, and that funds deposited into a non-interest-bearing account should be considered as constructively earning interest at the government's alternative borrowing rate. However, Vosburgh's funds were placed in an interest-bearing account. We hold that under these circumstances, when seized funds are held in an account that bears interest, the government satisfies its obligation under *$277,000* to disgorge the benefit that it has received from using the

claimant's property by turning over the interest earned on funds in the account.

As we have jurisdiction, 28 U.S.C. § 1291, we affirm the district court's order to pay interest at the prevailing government rate, but, as the government concedes, we must remand for the limited purpose of computing and ordering payment to Vosburgh of the amount of interest earned on the interest.

I

Based on suspected violations of the Bank Secrecy Act, 31 U.S.C. §§ 5313(a) and 5324, the government seized computer equipment and $314,556.92 in U.S. currency from the residence of, and various accounts owned by, Margaret Vosburgh, Sandra Vosburgh, and William Vosburgh (Vosburgh). The government then brought a civil *in rem* forfeiture action under 18 U.S.C. § 981, which the district court dismissed in response to this court's decision in *United States v. Bajakajian,* 84 F.3d 334 (9th Cir.1996), *cert. granted,* —— U.S. ——, 117 S.Ct. 1841, 137 L.Ed.2d 1045 (1997).

The government lodged a proposed form of order directing the United States to release the seized properties and pay interest on the seized cash assets "at the prevailing government rate" from the date the funds were deposited to the date the funds would be paid. Vosburgh objected on the footing that he deserved a higher "investment rate of interest," and requested a hearing to determine this rate of return.

The government submitted the declaration of Gary E. Kastorf, Financial Management Analyst, United States Department of Treasury, Executive Office of Asset Forfeiture, in support of its position. Kastorf indicates that Vosburgh's funds were deposited in the "suspense account" of the Department of Treasury Forfeiture Fund on April 26, 1993. Pursuant to 31 U.S.C. § 9703, the Forfeiture Fund is available to the Secretary of the Treasury for various law enforcement purposes relating to seizures and forfeitures, from paying the expenses of seizures to compensating informants to satisfying liens. 31 U.S.C. § 9703(a). As Kastorf explains, monies in the suspense account of the Treasury

Forfeiture Fund that are not needed to meet current obligations are invested in securities issued or guaranteed by the United States, and are reinvested every thirty days.[1] Accordingly, Kastorf calculated the benefit the United States received while holding Vosburgh's currency based on the interest rate for the thirty-day United States Treasury bill. It came to $48,483.44 in interest earned by the Fund on $314,556.92.[2] He made no similar calculation of the amount of additional interest received on interest earned during the period the government held the Vosburgh currency.

The district court rejected Vosburgh's request for an alternative (or investment) rate of return and an evidentiary hearing, and ordered the government to pay interest on the currency at the prevailing government rate. Vosburgh sought clarification and/or correction of the order, but it was denied. The Treasury then wire transferred $314,556.92 to Vosburgh, representing the seized currency, and $50,151.01, representing the benefit (interest) gained by the government up to the date Vosburgh's funds were returned. Vosburgh timely appealed.

## II

■ Vosburgh argues that *$277,000* entitles him to prejudgment interest at a rate reflecting the actual benefit derived by the government during its wrongful possession of his money, and that he is entitled to an evidentiary hearing to determine the amount of that benefit. He says that he is not due the thirty-day Treasury bill rate, but the rate that the government would have paid had it not had the unfettered use of his family's money. Vosburgh thus concludes that *$277,000* mandates a hearing to trace the use of his funds and determine what interest rate

applies to those Vosburgh funds that the government did not invest but instead used to finance its current operations or otherwise reduce its need to borrow.

The government agrees that it must return the benefit that it gained from holding Vosburgh's funds pursuant to *$277,000*, but argues that it did so by returning the interest earned at the rate paid for thirty day United States Treasury bills because the seized funds were invested in thirty day Treasury bills. The government points out that Congress left the management of amounts in the Fund to the discretion of the Secretary, 31 U.S.C. § 9703(e), and that the Secretary complied with the limitations in § 9703(e) by determining that seized money deposited in the Fund suspense account would be invested in thirty day Treasury bills. It also correctly notes that procedures for handling seized funds in the Forfeiture Fund (where Vosburgh's currency was deposited) differ from the Seized Asset Deposit Account into which the currency seized in *$277,000* was deposited in that the Forfeiture Fund is invested in government securities with an identifiable benefit, whereas funds in the Seized Asset Deposit Account did not bear interest.[3]

■ We agree with the government that *$277,000*'s "alternative borrowing rate" has no application where seized funds are deposited in an interest-bearing account. Under these circumstances, the funds "actually" earn interest at the prevailing government rate and there is no need to treat them as "constructively" earning interest at the government's "alternative borrowing rate."

In *$277,000*, we were concerned with the extent to which an owner may recover an amount related to the loss of use of his property between the time of seizure and

---

1. Section 9703(e) provides that "[a]mounts in the Fund, and in any holding accounts associated with the Fund, which are not currently needed for the purposes of this section may be kept on deposit or invested in obligations of, or guaranteed by, the United States and all earnings on such investments shall be deposited in the Fund."

2. The amount of interest totalled $50,151.01 by the time payment was made.

3. The Seized Asset Deposit Account, formally established by 28 U.S.C. § 524(c) as the Department of Justice Assets Forfeiture Fund, is available to the Attorney General for various expenses relating to the forfeiture and seizure of property. 28 U.S.C. § 524(c)(1). Pursuant to § 524(c)(5), amounts in this account can now be invested in obligations issued or guaranteed by the federal government, which was not the case during the relevant time period in *$277,000*. *See* 69 F.3d at 1494–95.

favorable adjudication of his claim. As it happened in that case, the seized funds were deposited in a holding account that did not bear interest. While we emphasized that "the government is not generally liable for damages or interest prior to judgment, because of sovereign immunity," 69 F.3d at 1492, we were offended by the notion that the government could profit from use of a claimant's property by (actually or constructively) earning interest on money. We reasoned that the tangible financial benefit that the government gets from retention of assets becomes part of the *res* itself. Thus, interest earned in an interest-bearing account would become part of, and would be substituted for, the *res* along with the original amount; but if—as in *$277,000*—seized currency is not put into an interest-bearing account, the funds will nevertheless "be considered as constructively earning interest at the government's alternative borrowing rate" because the government benefits by the amount of interest it doesn't have to pay while the Treasury has use of the money. Such amounts, we concluded, become just as much a part of the *res* as earned interest because they are its equivalent. *Id.* at 1495–96.

Here, we start and stop with the fact that Vosburgh's currency was deposited into an interest-bearing account. The interest actually earned at the thirty-day Treasury bill rate applicable to funds in the suspense account represents the extent to which the government profited or benefitted from use of Vosburgh's property. There is no need to go further. As actual interest was earned, the constructive equivalent is immaterial.

Vosburgh submits that this can't be right, because the government avoids at least some borrowing through use of the Fund since interest on the suspense account is paid only on those monies not used for other purposes. He speculates that a total investment of his funds in thirty-day Treasury bills is unlikely, given the myriad expenditures that the government is authorized to make from the Forfeiture Fund. Therefore, in his view, the district court should have determined exactly how the money in the Fund was used during the time the government held Vosburgh's currency.

We disagree for, as we have explained, *$277,000*'s "alternative borrowing rate" analysis is not implicated when seized funds are deposited in an interest-bearing account. Beyond this, Vosburgh in effect argues that his money should be traced. For this he offers no authority, nor can we imagine what ground exists for doing so. Kastorf's declaration provides uncontroverted evidence of the benefit gained by the government: interest actually earned on the account; and nothing in the record suggests that the government did not in fact earn $48,483.44 in interest on $314,556.92 through the date calculated. We therefore decline to require the government to account further for Vosburgh's funds. As the district court correctly stopped its analysis with the interest actually earned, there was no reason to hold an evidentiary hearing.

Vosburgh further argues that, even if he's wrong about the "alternative borrowing rate," his money should have been invested in longer-term securities because it was clear from day one that it would take longer than thirty days to resolve his claim. But inquiry under *$277,000* is confined to whether the government invested a claimant's funds and if so, how much it made. This inquiry has nothing to do with the quality of the investments. As the government may only be ordered to disgorge its benefit, it doesn't matter that it (and in turn Vosburgh) might have benefited *more* by a different investment strategy. Accordingly, the district court properly ordered interest at the prevailing rate because this represents the extent (and only the extent) to which the government benefited from use of Vosburgh's money.

### III

Vosburgh contends that he is entitled to compound interest because 31 U.S.C. § 9703(e) requires the Treasury to reinvest earnings from its suspense fund investments. However, we do not need to decide whether the Treasury has a statutory obligation to reinvest its earnings because the government concedes that the Treasury in fact reinvests the proceeds from maturing Treasury bills in more Treasury bills every thirty days. Since

Kastorf's calculations do not reflect the interest earned on the interest that the seized funds accrued, the government agrees that a remand is necessary to determine the amount of compound interest owed to Vosburgh.

## IV

■ We conclude that when seized currency is deposited in an interest-bearing Treasury account, the government must only return with the *res* the interest earned by the Fund at the prevailing rate. This meets the government's obligation to disgorge benefits under *United States v. $277,000 U.S. Currency*. While the amount of interest on Vosburgh's money (calculated in accordance with the court's order that we affirm) is not disputed, there is no factual record on compound interest. Therefore, we remand for the limited purpose of calculating the amount of interest that accrued on the interest that the government has already paid to Vosburgh.[4]

Each party shall bear its own costs.

AFFIRMED IN PART; REMANDED IN PART.

4. Both in the district court and on appeal Vosburgh has been represented by the Federal Public Defender of the District of Oregon. Through this representation, he has recovered more than $360,000 and, on remand, will receive several thousand dollars more in compound interest. As Vosburgh's counsel represented at oral argument that a sum had been deposited with the district court to cover possible reimbursement, we assume that on remand the court will determine whether, pursuant to 18 U.S.C. § 3006A(f), Vosburgh should be required to reimburse the court for deposit in the Treasury for the services of the Federal Public Defender both in the district court and on appeal, either from the funds on deposit or via offset against the compound interest to be awarded, or both.