**UNITED STATES of America,**
**Plaintiff,**

v.

**$100,348.00 U.S. CURRENCY,**
**Defendant.**

**Eytan Mayzel, Claimant.**

**No. CV 00–08921 RSWL (RZx).**

United States District Court,
C.D. California.

Aug. 1, 2001.

John S. Gordon, Acting U.S. Attorney, Janet C. Hudson, AUSA, Los Angeles, CA, for plaintiff.

Eric Honig, Law Offices of Eric Honig, Marina Del Rey, CA, for claimant.

## ORDER DENYING CLAIMANT'S MOTIONS FOR (1) FOR SUMMARY JUDGMENT BASED ON LACK OF PROBABLE CAUSE FOR FORFEITURE; (2) REMISSION/DENIAL OF ANY FORFEITURE PURSUANT TO THE 8TH AMENDMENT; GRANTING IN PART AND DENYING IN PART GOVERNMENT'S MOTION FOR SUMMARY JUDGMENT; GRANTING GOVERNMENT'S REQUEST FOR ADDITIONAL DISCOVERY

LEW, District Judge.

### I.

### INTRODUCTION

This case arises out of Claimant Eytan Mayzel's ("Claimant") violation of the currency reporting laws upon his departure from the United States. United States Customs officers seized Defendant $100,348.00 United States Currency ("defendant currency") from Claimant as he was about to board a Virgin Atlantic flight to return to his home in Israel. Plaintiff United States of America ("Government") filed this civil forfeiture action pursuant to 31 U.S.C. § 5317.

Before the Court are Claimant's Motions for: (1) Summary Judgment Based on Lack of Probable Cause for Forfeiture; and (2) Remission/Denial of any Forfeiture Pursuant to the Eighth Amendment.[1] Because the Government requests summary

---

1. The Court construes Claimant's Motions as a Motion for Summary Judgment on two grounds: (1) that the Government cannot establish probable cause for forfeiture, and (2) that forfeiture in this case would constitute an excessive fine under the Eighth Amendment.

judgment in its Opposition, the Court treats the matter as cross-motions for summary judgment. Also before the Court is the Government's request for additional discovery.

The cross-motions came on regularly for hearing on April 16, 2001, at which time the Court heard oral argument and took the matter under submission. After reviewing all papers filed in support of and in opposition to the cross-motions and the arguments of counsel, the Court hereby **DENIES** Claimant's Motion for Summary Judgment, and **GRANTS IN PART** and **DENIES IN PART** the Government's cross-motion for summary judgment.

Based upon the undisputed facts, the Government had probable cause to institute this forfeiture proceeding. Accordingly, the Court enters summary judgment in favor of the Government on the issue of probable cause. In addition, the Government is entitled to judgment as a matter of law on Claimant's innocent owner defense. The Court finds, however, that there is either a genuine issue of material fact or insufficient evidence to determine whether forfeiture of defendant currency would violate the Excessive Fines Clause. An evidentiary hearing is required so that the parties may present evidence relevant to whether forfeiture of defendant currency constitutes an excessive fine. The Court, therefore, **DENIES** the cross-motions for summary judgment on the Excessive Fines issue.

The Government requests additional time to conduct discovery as to the alleged owner of the defendant currency. Finding good cause to reopen discovery, the Court hereby **GRANTS** the Government's request and reopens discovery for a period of ninety days from the date of this Order.

## II.

### BACKGROUND

On February 29, 2000, as passengers of Virgin Atlantic Flight 24 to London, England were preparing to board the aircraft, United States Customs Senior Inspector Roberto N. Uscanga ("Uscanga") and other Customs inspectors were questioning passengers about their compliance with the currency reporting laws.[2] Noticing a lump under Claimant's coat, Uscanga approached Claimant as he was walking quickly toward the jet bridge. Claimant was carrying a small bag under his coat.

Uscanga identified himself as a Customs officer, and explained that he was conducting currency verifications. Uscanga asked Claimant the purpose of his trip to the United States. Claimant responded that he was visiting family and friends. Uscanga explained the currency reporting requirements, and informed Claimant that he was required to fill out a form if he was carrying more than $10,000 and that failure to report the currency could result in seizure or a fine. Uscanga then asked Claimant how much money he was transporting. Claimant stated that he was carrying $5,000. Uscanga asked Claimant to show him the money he was carrying. Claimant retrieved a bundle of cash from his pocket. Uscanga believed the bundle of currency amounted to less than $5,000.[3] The above exchange between Uscanga and Claimant transpired in English.

Uscanga then asked Claimant to remove his coat and to hand him the bag Claimant had strapped on his shoulder. Uscanga opened the bag, revealing a large amount of currency that appeared to Uscanga to be more than Claimant declared and more

---

**2.** A person or his bailee must file a report if he or she is about to knowingly transport monetary instruments of more than $10,000 from the United States to a place outside the United States or vice versa. 31 U.S.C. § 5316.

**3.** The bundle of currency amounted to $348.

than $10,000.[4] Uscanga handed Claimant Customs Form 503 which explains the reporting requirements and the consequences of failure to report, and asked Claimant to read and sign it. Claimant refused to read or sign the form, and stated that he did not speak English. At this point, Claimant asked to speak to his attorney.

Claimant was charged with attempting to transport over $10,000 in United States currency out of the United States without reporting it, 31 U.S.C. § 5316, and making false statements to a federal officer, 18 U.S.C. § 1001. Claimant was convicted on the 18 U.S.C. § 1001 charge, and acquitted on the charge of violating 31 U.S.C. § 5316.

Claimant contends that the owner of the defendant currency is Eric Amiel ("Amiel").[5] Claimant grew up with Amiel's nephew in a small town in Israel. Amiel submits a declaration in which he states that the source of the defendant currency is from the sale of his 99¢ Store. Amiel apparently received approximately $90,000 from the sale of the store. Amiel allegedly asked Claimant to bring the cash from the sale plus an additional $10,000 to Amiel's sister in Israel. Amiel asserts that the defendant currency has no connection to illegal activity. To date, Amiel has not filed a claim for the defendant currency.

On August 22, 2000, the Government brought this action for civil forfeiture pursuant to 31 U.S.C. § 5317.

### III.

### DISCUSSION

■ Although Claimant moves for summary judgment, the Court treats the papers as cross-motions for summary judgment because in its Opposition, the Government requests judgment in its favor. Although there has been no cross-motion filed, the Court may *sua sponte* grant summary judgment to the non-moving party. *Kassbaum v. Steppenwolf Productions, Inc.*, 236 F.3d 487, 494 (9th Cir.2000).

### A. Legal Standard: Motion for Summary Judgment

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). A genuine issue is one in which the evidence is such that a reasonable factfinder could return a verdict for the non-moving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The evidence, and any inferences based on underlying facts, must be viewed in a light most favorable to the opposing party. *Diaz v. Am. Tel. & Tel.*, 752 F.2d 1356, 1358 n. 1 (9th Cir. 1985).

Where the moving party has the burden of proof at trial—the plaintiff on a claim for relief or the defendant on an affirmative defense—the movant must establish "all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir.1986); *Selznick v. Turner Entm't Co.*, 990 F.Supp. 1180, 1183 (C.D.Cal.1997). "The crucial question for the court is whether there is a 'genuine

---

**4.** Inside the bag were ten ziplock bags, each containing $10,000, for a total of $100,000.

**5.** Amiel did not come forward as the alleged owner of the defendant currency until approx-imately one year after the seizure. Although the claim filed on or about September 20, 2000 indicates that Claimant had a possessory interest in the defendant currency, Claimant did not mention Amiel as the owner.

issue' of fact concerning any essential element of the claim on which judgment is being sought." *Fontenot,* 780 F.2d at 1195.

The party opposing a motion supported by affidavits cannot discharge his burden by alleging legal conclusions. *Id.* The nonmoving party must set forth specific facts showing there is a genuine issue for trial. *Celotex v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Leer v. Murphy,* 844 F.2d 628, 631 (9th Cir.1988).

■ In the forfeiture context, summary judgment procedures are "construed in the light of the statutory law of forfeitures, and particularly the procedural requirements set forth therein." *United States v. One 56–Foot Motor Yacht Named Tahuna,* 702 F.2d 1276, 1281 (9th Cir.1983). In the case at bar, the Government must initially establish probable cause for institution of this forfeiture proceeding, however, Claimant has the ultimate burden to prove that the defendant currency is not subject to forfeiture.

**B. Civil Forfeiture Pursuant to 31 U.S.C. § 5317(c)**

A person or his bailee is required to file a report if he or she is about to transport monetary instruments of more than $10,000 at one time from the United States to a place outside the United States. 31 U.S.C. § 5316. If the individual fails to file the report required by 31 U.S.C. § 5316, the monetary instruments may be seized and forfeited to the United States. *Id.* § 5317(c).

■ In civil forfeiture actions, the government bears the initial burden of demonstrating probable cause for instituting the forfeiture proceeding. 19 U.S.C. § 1615; *United States v. $191,910.00 in U.S. Currency,* 16 F.3d 1051, 1066 (9th Cir.1994). "Whether probable cause exists to institute proceedings is solely a question of what information [was] in the govern-

ment's possession[.]" *$191,910.00,* 16 F.3d at 1068. If the government demonstrates probable cause for instituting the action, the ultimate burden shifts to the claimant to prove by a preponderance of evidence that the property is not subject to forfeiture. *United States v. 3814 NW Thurman Street, Portland, Oregon, A Tract of Real Property,* 164 F.3d 1191, 1196 (9th Cir. 1999). "The claimant can . . . either refute the government's showing of probable cause or provide an affirmative defense to forfeiture." *Id.* at 1195 (citations omitted).

■ In a Notice of Additional Case Law Affecting Claimant's Pending Motion for Summary Judgment, Claimant contends that the Civil Asset Forfeiture Reform Act of 2000 (the "Act") changes the burden of proof in this case. Specifically, the Act provides: "In a suit or action brought under any civil forfeiture statute for the civil forfeiture of any property . . . the burden of proof is on the Government to establish, by a preponderance of the evidence, that the property is subject to forfeiture[.]" 18 U.S.C. § 983(c). The Act applies to forfeiture proceedings "commenced on or after the date that is 120 days after the date of the enactment of [the] Act." Civil Asset Forfeiture Reform Act of 2000, Pub.L. No. 106–185, 114 Stat. 202, 225. The Act was signed into law on April 25, 2000; therefore, the Act applies only to proceedings commenced on or after August 23, 2000. The Government filed its Complaint on August 22, 2000.

In support of his argument that the Act applies to the instant matter, Claimant cites to *United States v. Real Property in Section 9, Town 29 North,* 241 F.3d 796 (6th · Cir.2001). In *Real Property,* the Sixth Circuit held that the Act applied to a pending forfeiture proceeding thereby imposing a preponderance of the evidence burden upon the government. *Id.* at 800.

This Court is not bound by *Real Property* nor is it persuaded by its reasoning.

"When a case implicates a federal statute enacted after the events in suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, ... there is no need to resort to judicial default rules." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 280, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). In the case at bar, Congress explicitly states that the Act applies to forfeiture proceedings commenced on or after August 23, 2000. The Court need go no further than this express language to determine that the Act does not apply to the instant matter because the Government filed its Complaint on August 22, 2000. "A civil action is *commenced* by filing a complaint with the court." Fed. R.Civ.P. 3 (emphasis added). Accordingly, the Court applies the procedural framework set forth above.

## C. Cross–Motions for Summary Judgment

Claimant moves the Court for summary judgment on the ground that the Government lacked probable cause to initiate this forfeiture proceeding. Claimant also contends that any forfeiture for violation of 31 U.S.C. § 5316 violates the Excessive Fines Clause. Finally, Claimant argues that even if a proportionality test is applied, forfeiture in this instance would be grossly disproportional to a violation of 31 U.S.C. § 5316, and would therefore constitute an excessive fine.

The Government argues that it has demonstrated the requisite probable cause. The Government also contends that Claimant cannot raise an innocent owner defense or challenge the excessiveness of the forfeiture pursuant to the Excessive Fines Clause because Claimant does not have an ownership interest in the defendant currency. The Government requests summary judgment in its favor because there was probable cause for institution of the forfeiture proceeding, and Claimant cannot meet his burden of proving by a preponderance of the evidence that defendant currency is not subject to forfeiture.

### 1. *Probable Cause*

■ Claimant correctly argues that the Government must demonstrate that it had probable cause at the time it instituted this forfeiture proceeding to believe a violation of 31 U.S.C. § 5316 was committed with respect to the defendant currency. In support of his argument that the Government lacked probable cause in this instance, Claimant primarily relies on *United States v. $359,500 in United States Currency*, 25 F.Supp.2d 140 (W.D.N.Y. 1998).

In *$359,500*, the claimant failed to report the $359,500 in currency he was carrying when he left the United States via the Peace Bridge. *Id.* at 141. The court held that civil forfeiture was inappropriate because the claimant did not have constructive knowledge of the currency reporting requirement. *Id.* at 147. The court found constructive knowledge lacking for a number of reasons, including the fact that the claimant was unsophisticated, uneducated, and had difficulty speaking English. *Id.* at 145. The court reasoned that there were no signs or notices posted on the bridge to inform the casual traveler of the reporting requirement. *Id.* at 143. Moreover, the claimant traveled outside the United States only a few times and was not required to fill out a currency report on any of those trips. *Id.*

Claimant attempts to analogize the facts of this case to the facts of *$359,500*. Specifically, Claimant contends that he is unsophisticated, he was born in Israel where he lived until he was twenty-four years old, and that he had little formal education and

difficulty speaking, reading, or writing English. Moreover, Claimant's return trip to Israel was the first time Claimant traveled out of the United States, and there were no signs posted explaining the currency reporting requirement.

Claimant's reliance on *$359,500* is misplaced. The facts the court relied upon in denying forfeiture in that case were relevant to its finding that the claimant did not have constructive knowledge of the currency reporting requirement. In the Second Circuit, currency is not subject to forfeiture unless the claimant has at least constructive knowledge of the currency reporting requirement. *United States v. $359,500 in U.S. Currency*, 828 F.2d 930, 932 (2d Cir.1987). In this Circuit, however, "[t]he only knowledge requirement is that the person know that he or she is transporting more than [$10,000] out of the country." *United States v. $122,043.00 in U.S. Currency*, 792 F.2d 1470, 1474 (9th Cir.1986) (footnote omitted).

In a similar vein, Claimant cannot rely upon *United States v. Alzate–Restreppo*, 890 F.2d 1061 (9th Cir.1989). In *Alzate–Restreppo*, the defendant was convicted of failure to report an attempt to transport more than $10,000 out of the United States in violation of 31 U.S.C. §§ 5316(a)(1)(A), 5322(a). *Id.* at 1062. The defendant argued on appeal that there was insufficient evidence that he had knowledge of the reporting requirement. *Id.* at 1063–64. The Ninth Circuit discussed evidence presented by the government at trial proving that defendant had knowledge of the currency reporting requirement such as posted signs and announcements in two languages over the public address system. *Id.* at 1064–65. Claimant argues that the absence of similar evidence in the instant matter deprived the Government of probable cause to institute the forfeiture proceeding.

■ *Alzate–Restreppo* is distinguishable from the case at bar because it is a criminal case. "[I]n a prosecution under section 5316(a)(1)(A), the government must prove that the defendant had knowledge that (1) he was transporting funds in excess of $10,000 *and* (2) the law required him to submit a report." *Id.* at 1064 (emphasis added) (citing *United States v. Ibarra–Alcarez*, 830 F.2d 968, 974 (9th Cir.1987)). Civil forfeiture for violation of the currency reporting requirement, on the other hand, requires only that the claimant have knowledge that he or she is transporting more than $10,000 in or out of the United States. Similarly, Claimant's arguments regarding the finding in his criminal trial are inapposite.

In the instant matter, there is no genuine issue of material fact that Claimant knew he was transporting the defendant currency, and Claimant does not deny he was about to depart the United States. The undisputed facts compel the conclusion that the Government had probable cause to institute this forfeiture proceeding. Accordingly, the Court enters summary judgment in favor of the Government on the probable cause issue.

### 2. *Innocent Owner Defense*

■ In order to prevail on an innocent owner defense, a claimant must "establish three facts: his ownership interest in the property, any illegal use of the property was done without his knowledge or consent, and he took all reasonable steps to prevent the proscribed use of the property." *United States v. $69,292.00 in U.S. Currency*, 62 F.3d 1161, 1165 (9th Cir.1995). The Government contends, and Claimant does not dispute, that Claimant cannot prevail on an innocent owner defense. There is no genuine issue of fact regarding ownership of the defendant currency; both parties agree that Claimant

does not have an ownership interest. Accordingly, the Government is entitled to judgment in its favor on Claimant's innocent owner defense.

### 3. *Excessive Fines Clause*

 The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. "The Excessive Fines Clause limits the Government's power to extract payments, whether in cash or in kind, 'as *punishment* for some offense.'" *Austin v. United States,* 509 U.S. 602, 609–10, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993) (citation omitted) (emphasis in original). Forfeitures are "'fines' if they constitute punishment for an offense." *United States v. Bajakajian,* 524 U.S. 321, 328, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998) ("*Bajakajian II*"). In order to determine if a forfeiture constitutes punishment, courts scrutinize the statutory scheme authorizing forfeiture. *See, e.g., id.* at 327–35, 118 S.Ct. 2028. The Ninth Circuit has held that forfeiture pursuant to the statute at issue here, 31 U.S.C. § 5317, is punitive in part, and may be challenged as an excessive fine. *United States v. $273,969.04 U.S. Currency,* 164 F.3d 462, 466 (9th Cir. 1999).

 The Government argues that Claimant cannot raise the Excessive Fines Clause as a defense because Claimant does not assert an ownership interest in the defendant currency, and that therefore, forfeiture cannot constitute a "fine" as to Claimant. Specifically, the Government contends that Claimant cannot assert Amiel's constitutional rights. In support of this argument, the Government cites *Wasson v. Sonoma County Junior College,* 203 F.3d 659 (9th Cir.2000), a First Amend-

ment case dealing with third-party standing. *Wasson* is inapplicable to the case at bar; it is neither factually nor legally analogous to the matter before the Court. Neither party disputes that Claimant has standing in this case.[6]

The Government does not cite any cases, nor could the Court find any cases, where a claimant asserting only a possessory interest in the seized currency is prohibited from raising the Excessive Fines Clause as a defense to forfeiture. During oral argument, the Government relied on *$69,292.00* in support of its argument that Claimant cannot challenge forfeiture of the defendant currency as an excessive fine. In *$69,292.00,* the Ninth Circuit remanded the case to the district court to resolve two brothers' competing claims of ownership to the seized currency. 62 F.3d at 1163. In doing so, the court noted that the claimants' ability to challenge the forfeiture based on the Double Jeopardy Clause and to raise the innocent owner defense depended on which brother owned the seized currency. *Id.* Nothing in the opinion, however, supports the argument made by the Government here. In fact, both claimants in *$69,292.00* contested the forfeiture of the seized currency based on the Excessive Fines Clause. *Id.* at 1166–67.

 Cases addressing the Excessive Fines Clause in situations such as those presented here do not conduct the individualized inquiry requested by the Government, but rather, address whether the statutory scheme authorizing the forfeiture serves in part to punish. *See, e.g., $273,969.04,* 164 F.3d at 466. If it does, the forfeiture constitutes a "fine," and the only remaining question is whether the forfeiture is "grossly disproportional to the

---

6. A possessory interest in the seized currency is sufficient to confer standing to challenge a forfeiture. *United States v. $191,910.00 in*

*U.S. Currency,* 16 F.3d 1051, 1057 (9th Cir. 1994).

gravity of [the] offense." *Bajakajian II,* 524 U.S. at 334, 118 S.Ct. 2028.

Claimant argues that full forfeiture of the defendant currency would constitute an excessive fine in this case. Claimant relies on the Ninth Circuit opinion in *United States v. Bajakajian,* 84 F.3d 334 (9th Cir.1996) ("*Bajakajian I* ") to support his assertion that any forfeiture of currency pursuant to 31 U.S.C. § 5317 violates the Excessive Fines Clause, and that there is no need for the Court to conduct a proportionality analysis.

In *Bajakajian I,* the Ninth Circuit held that "[f]orfeiture of currency is unconstitutional when the crime to which the forfeiture is tied is a mere failure to report pursuant to 31 U.S.C. § 5316 [the criminal counterpart to 31 U.S.C. § 5317]." 84 F.3d at 337–38. In so holding, the Ninth Circuit relied on a two-part test for determining whether a forfeiture is unconstitutional under the Excessive Fines Clause. *Id.* at 336–38. The court invalidated the forfeiture under the first prong of the test, finding that the forfeited currency was not an "instrumentality" of the crime committed, and for this reason, any forfeiture for failure to comply with the currency reporting laws would be unconstitutionally excessive. *Id.* at 338.

■ The Supreme Court rejected the "instrumentality" analysis as irrelevant in this context because forfeiture of currency for failure to report is considered punitive; thus, the test for excessiveness "involves solely a proportionality determination." *Bajakajian II,* 524 U.S. at 333–34, 118 S.Ct. 2028; *see $273,969.04,* 164 F.3d at 466 n. 3. Although *Bajakajian II* involved criminal forfeiture pursuant to 31 U.S.C. § 5316, its holding has been extended to civil forfeitures under 31 U.S.C. § 5317. *$273,969.04,* 164 F.3d at 466. Accordingly,

the Court rejects Claimant's argument that no proportionality analysis is required in the instant matter.

■ Having already determined that forfeiture in this case constitutes punishment, and is therefore a "fine," the Court must ascertain whether the forfeiture is "grossly disproportional to the gravity of [Claimant's] offense." *Bajakajian II,* 524 U.S. at 334, 118 S.Ct. 2028. To make that determination, the Court must consider whether the defendant currency is connected to other illegal activities, the extent of other penalties that could be imposed for the offense, and whether the offense caused harm. *Id.* at 337–41, 118 S.Ct. 2028; *United States v. 3814 NW Thurman Street, Portland, Oregon, A Tract of Real Property,* 164 F.3d 1191, 1197–98 (9th Cir. 1999). The Court must also compare the gravity of the offense to the amount of the forfeiture. *Bajakajian II,* 524 U.S. at 339–40, 118 S.Ct. 2028; *3814 NW Thurman,* 164 F.3d at 1198.

■ The Government requests additional time for discovery in order to produce evidence relevant to the factors set forth above. Although discovery cutoff was February 16, 2001, the Court finds that there is good cause to reopen discovery for sixty days from the date of this order in light of the fact that Amiel's name did not surface until nearly one month after the discovery cutoff.[7] In addition, the Court finds that there are genuine issues of material fact whether the defendant currency is related to illegal activity. In light of the factual disputes, the Court will hold an evidentiary hearing for the purpose of deciding whether forfeiture of the defendant currency violates the Excessive Fines Clause. Because there is a genuine issue of material fact, the Court

---

**7.** In a footnote, Claimant requests that the Court allow Amiel to file a claim or otherwise join this case as a party. Claimant's request

is **DENIED** because Claimant cannot make this request on Amiel's behalf.

denies both parties' motions for summary judgment of the Excessive Fines Clause issue.

## IV.

### *CONCLUSION*

For the foregoing reasons, the Court **DENIES** Claimant's Motion, **GRANTS IN PART** and **DENIES IN PART** the Government's motion, and **GRANTS** the Government's request for additional discovery. The only remaining issue in the case is whether forfeiture of the defendant currency violates the Excessive Fines Clause, an issue to be resolved at an evidentiary hearing to be set by the Court.

**IT IS SO ORDERED.**