**Jose Louis NAVARRO, Plaintiff— Appellant,**

v.

**CITY OF SOUTH GATE, a Municipal Corporation; George Troxcil, individually; George Troxcil, in his official capacity as Chief of Police; Albert Carrillo; A. Lopez, Defendants—Appellees.**

No. 02–55395.

D.C. No. CV–00–05977–MMM.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 4, 2003.

Decided Nov. 14, 2003.

Meir J. Westreich, Pasadena, CA, Lewis R. Crouse, II, Santa Ana, CA, Lisa D. Wehren, Irvine, CA, for Plaintiff–Appellant.

Eduardo Olivo, Albert Carillo, Carlos N. Iriarte, Maria M. Keller, Downey, CA, for Defendants–Appellees.

Before REINHARDT, O'SCANNLAIN and FISHER, Circuit Judges.

## MEMORANDUM *

Jose Navarro appeals the grant of summary judgment in favor of defendants on Navarro's First, Fourth and Eighth Amendment claims under 42 U.S.C. § 1983. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm in part, reverse in part and remand to the district court.

We review de novo the district court's grant of summary judgment on the ground of qualified immunity. *Jackson v. City of Bremerton,* 268 F.3d 646, 650 (9th Cir. 2001). The relevant facts are known to the parties and are discussed here briefly and only as necessary.

## I. Fourth Amendment

■ The district court granted summary judgment on Navarro's claims for false arrest, abuse of process and malicious prosecution, finding that the Officers Carrillo and Lopez were entitled to qualified immunity.[1] A finding of qualified immunity depends on a two-part analysis. *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). First, we must determine whether, taken in the light most favorable to Navarro, the facts alleged show the officers' conduct violated a constitutional right. *Id.* If we conclude such a violation could be made out, we must ask whether the right was clearly established. *Id.* That is, we must determine whether "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 202 (quoting *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).

The district court found a material dispute of fact as to whether probable cause existed at the time of arrest because (1)

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

1. On appeal, Navarro does not advance his false arrest, malicious prosecution or abuse of process claims against Chief Troxcil. Nor does he contest the district court's determination that summary judgment is appropriate on his claim based on false information or material omissions in the police report. Thus, we express no opinion on the district court's determination of these claims.

Officer Carrillo admitted he did not consider the issue of self-defense and (2) the officers did not resolve discrepancies in the information provided by Sosa, Hernandez and Acosta. Because this determination is undisputed, we assume that the facts, when viewed in Navarro's favor, establish that the officers violated his Fourth Amendment rights by arresting him without probable cause. We therefore proceed directly to the second step of the *Saucier* analysis.[2]

It is well-settled that "[p]robable cause exists when under the totality of circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the defendant] had committed a crime." *Grant v. City of Long Beach,* 315 F.3d 1081, 1085 (9th Cir.2002) (internal quotation marks omitted). In a § 1983 action seeking damages for an arrest without probable cause, "[t]he qualified immunity inquiry ... is an objective one, focusing on whether a reasonable officer could have believed that probable cause existed to arrest the plaintiff." *Mendocino Envtl. Center v. Mendocino County,* 14 F.3d 457, 462 (9th Cir. 1994) (internal quotation marks omitted). We have held that "[t]he defendant's knowledge is relevant, since the objective analysis is focused on a reasonable officer confronted with the facts and circumstances actually known to the officer." *Id.* (internal quotation marks omitted).

We conclude that a reasonable officer confronted with the facts and circum-

stances known to Officers Carillo and Lopez at the time of Navarro's arrest would not have determined that probable cause existed for the arrest, at least without making further inquiry. Officer Walters' report strongly suggests that Navarro was trying to defend himself (or possibly the employees and customers of the bar) by frightening away an unruly and "very intoxicated" group of four men who were severely injuring Navarro with bottles and pool sticks. All witnesses clearly stated that a single shot was fired into the ground, as Navarro claimed. Moreover, the officers were aware that Hernandez—the witness whose statements formed the basis of the probable cause determination—had changed his story dramatically since the initial investigation, and that the new version of events that he recounted was not supported by the other witnesses' accounts.

Yet in the face of this ample evidence indicating that Navarro discharged the weapon in self-defense, Officers Carrillo and Lopez conducted what appears from the record to have been a reckless investigation that neither considered self-defense nor included the minimal follow-up investigation necessary to clarify the inconsistencies relevant to the self-defense inquiry. In particular, the officers failed to ask Sosa, Hernandez or the Acostas whether anyone had used a knife, and they neglected to discuss the one-on-one fight between Hernandez and Navarro that immediately

2. Navarro also contends the officers are collaterally estopped from arguing they had probable cause to arrest because during the course of the criminal case, a California court determined that there was no probable cause to hold Navarro for trial. We affirm the district court's conclusion that Navarro may not avail himself of collateral estoppel. The California court's determination was based, in part, on evidence discovered after Navarro's arrest but before the preliminary hearing. In-

deed, the court flagged this new evidence in making its decision. Because this information was not "available *and known* to the officers," there is no identity of issues that would permit the imposition of collateral estoppel. *Haupt v. Dillard,* 17 F.3d 285, 289 (9th Cir.1994) (emphasis added). We express no opinion on the district court's conclusion that, under California law, city police officers are not in privity with the state.

proceeded the gunshot. Moreover, the officers failed to resolve the discrepancy in the number of shots fired as reported by Hernandez, Sosa and Acosta at their initial and subsequent interviews, though they easily could have done so. Notably, Carrillo and Lopez could have consulted Officer Walters or sought basic ballistics evidence to attempt to clarify these discrepancies. Contrary to defendants' assertion, a further investigation of this nature would not have required the officers to conduct a mini-trial to determine the truth. Rather, this sort of minimal further inquiry is exactly the type of follow-up investigation that a reasonable officer would have conducted in order to establish probable cause in the face of clear exculpatory evidence.

The officers' failure to further investigate the possibility of self-defense—indeed, their failure even to acknowledge the evidence in support of such a claim—might not be fatal to their claim of qualified immunity if self-defense were merely an affirmative defense on which Navarro had the burden of proof. *See Broam v. Bogan,* 320 F.3d 1023, 1032 (9th Cir.2003) ("[A] law enforcement officer is not required by the Constitution to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent." (internal quotation marks omitted)). In this case, however, Navarro was arrested

for a crime that is statutorily defined so that negation of self-defense is an element of the offense on which the prosecution bears the burden of proof. Cal.Penal Code § 246.3 (West 2003); *People v. Alonzo,* 13 Cal.App.4th 535, 538, 16 Cal.Rptr.2d 656 (1993); California Jury Instructions, Criminal Instruction 9.03.3 (7th ed.2003). By failing to investigate material exculpatory evidence that negated an element of the offense, the officers did not consider the totality of the circumstances, and therefore they did not act reasonably in concluding that probable cause existed to arrest Navarro.[3] *See Broam,* 320 F.3d at 1032 ("An officer is not entitled to a qualified immunity defense . . . where exculpatory evidence is ignored that would negate a finding of probable cause.").

Given the clearly established nature of both the law defining the offense at issue and the requirement that officers consider the totality of the circumstances (exculpatory as well as inculpatory), as well as the presence of strong evidence indicating that Navarro acted in self-defense, a reasonable officer would not have sought to arrest Navarro without first considering whether the discharge of the firearm was privileged. This is particularly the case in light of the fact that the officers' investigation took nearly two weeks to finish and did not present the difficulty of drawing fine legal distinctions under exigent circumstances.

**3.** Defendants' reliance on *Easyriders Freedom F.I.G.H.T. v. Hannigan,* 92 F.3d 1486, 1499 (9th Cir.1996), and *Gasho v. United States,* 39 F.3d 1420, 1428 (9th Cir.1994), is misplaced. Both cases state that "an officer need not *have* probable cause for every element of the offense." *Hannigan,* 92 F.3d at 1499 (emphasis added); *Gasho,* 39 F.3d at 1428 (emphasis added). This line of cases stands for the proposition that probable cause is not undercut when there is an *absence of specific evidence* on a particular element. *See, e.g., United States v. Thornton,* 710 F.2d 513, 515 (9th Cir.1983) (lack of evidence that suspect was

not entitled to possess a gun did not negate probable cause because specific evidence on each element is not necessary); *see also Hannigan,* 92 F.3d at 1499 (officer need not have evidence of general intent element); *Gasho,* 39 F.3d at 1428 (same). A lack of evidence on a particular element, however, is quite a different matter from the presence of evidence that affirmatively suggests that an element cannot be met. Defendants have cited no authority for the proposition that officers may ignore exculpatory evidence on an element of the offense in making probable cause determinations.

*Cf. Graves v. City of Coeur D'Alene,* 339 F.3d 828, 846–47 (9th Cir.2003).

We therefore reverse the grant of summary judgment on Navarro's false arrest, abuse of process and malicious prosecution claims against the City and Officers Carrillo and Lopez.

## II. Eighth Amendment

Navarro next contends the district court erred in granting summary judgment on his two Eighth Amendment claims.

■ First, Navarro contends the officers submitted an inaccurate criminal history print-out, which resulted in a $55,000 increase in bail. We agree that a material dispute of fact would exist *if* Navarro had presented evidence that the inaccurate criminal history report was before the court when the court set bail. However, we find no such evidence in the record.

Navarro points only to a certified copy of the clerk's docket from Los Angeles Municipal Court. The docket notes that during the bail hearing, "[a] copy of the complaint and the arrest report [was] given to defendant's counsel." Even presuming the court also had the complaint and arrest report before it, there is no evidence that the inaccurate criminal history was attached to either of these two documents. As the district court noted, Navarro has not submitted certified copies of either the arrest report or the complaint from which we could determine their contents. Thus, Navarro has not put forth evidence sufficient to create a triable issue of fact.

■ Second, Navarro contends his Eighth Amendment rights were violated when he was detained for a longer period than was necessary. This claim, however, sounds not in the Eighth Amendment but

in the Due Process Clause of the Fourteenth Amendment. *Lee v. City of Los Angeles,* 250 F.3d 668, 686 (9th Cir.2001). Moreover, Navarro has failed to submit any admissible evidence supporting his claim.[4] Thus, we affirm the grant of summary judgment on Navarro's Eighth Amendment claims.

## III. First Amendment

■ Finally, Navarro contends summary judgment should not have been granted on his First Amendment claim, alleging he was arrested as part of an effort to close Fort Knotts because it offered topless dancing. The district court concluded Navarro has no First Amendment claim because the expression at issue is not his own but that of Fort Knotts. We think this question is better understood as an issue of a standing.

Parties ordinarily are not permitted to assert the constitutional rights of others. *NAACP v. Alabama,* 357 U.S. 449, 459, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958). In order to have standing in his own right to assert a First Amendment retaliation claim, Navarro "must demonstrate that [he] has engaged in constitutionally protected expression." *Wasson v. Sonoma County Junior Coll.,* 203 F.3d 659, 662 (9th Cir.2000). In *Wasson,* we held that a First Amendment claim may not be maintained by an individual who was retaliated against on the mistaken belief that she had made statements actually made by an anonymous third party. *Id.* at 662–63. We thus inquired as to whether Wasson satisfied the three-prong test for third-party standing. *Id.* at 633.

*Wasson* undermines Navarro's assertion that he has standing to assert his First Amendment claim. Like the plaintiff in *Wasson,* the fact that the government in-

---

4.  We find no abuse of discretion in the district     court's evidentiary rulings.

tended to chill First Amendment rights, and injured Navarro in an attempt to do so, is irrelevant to the direct standing inquiry. The only question is whether Navarro was engaged in expressive conduct.

In this respect, Navarro contends he was engaged in expressive conduct by virtue of his being the manager of Fort Knotts. Navarro points to no case indicating that the manager of a topless bar is *per se* engaged in expressive conduct. Nor have we been able to locate such precedent. Moreover, Navarro does not explain how his role in the operation of Fort Knotts intimately connected him with the bar's expressive conduct such that we might consider him to have engaged in protected speech.

Navarro might still be able to maintain his First Amendment claim if he could satisfy the three-prong test to establish third-party standing to vindicate the First Amendment rights of his employer, the bar's owner. *Id.* at 663. Navarro must demonstrate that (1) he suffered an injury in fact, (2) a close relationship to the third party and (3) some hindrance to the third party's ability to protect his own rights. *Id.* It is beyond dispute that Navarro's arrest without probable cause constitutes an injury in fact that resulted from a violation of his employer's First Amendment rights. Nor do we doubt Navarro and his employer maintain a sufficiently close relationship to permit third-party standing. However, Navarro is unable to demonstrate any hindrance to his employer's ability to vindicate his own rights. Because Navarro cannot bear his burden to establish First Amendment standing, either in his own right or in order to vindicate the rights of a third party, he does not have a First Amendment claim.

In sum, we reverse the summary judgment on Navarro's Fourth Amendment claim and remand for further proceedings.

However, we affirm the grant of summary judgment on his Eighth and First Amendment claims.

Each party shall bear its own costs on appeal.

**AFFIRMED in part; REVERSED in part and REMANDED.**